The first case and the only case on our docket this morning is Sherrod v. United Way Worldwide. Mr. Sanford? This is a matter of public knowledge. We did have other cases scheduled for today, but they were removed from the docket. That doesn't mean we have more time. May it please the Court, Brian Sanford on behalf of the appellate plaintiff Coneisha Sherrod. That's the way she pronounces her name, with the accent on the second syllable. This is a case about whether a cause of action exists against a third party who is alleged to have participated in the termination of employment of the employee of another party because the employee reported violations of ERISA and discrimination. Mrs. Sherrod, the plaintiff appellate. And I apologize for mispronouncing her name. Don't apologize. I'm sorry. No, no. Do not apologize. However, I'm just giving information. She brought the case against her employer, United Way of Tarrant County, and the parent entity United Way Worldwide, both claiming retaliation under ERISA and Section 1981. The trial court dismissed United Way Worldwide on 12B6 motion to dismiss. The case proceeded to trial against United Way of Tarrant County. There was a favorable verdict where the jury found retaliation. It was originally discrimination and retaliation during the trial, elected to just pursue the retaliation claim. The remedies were the same. The ERISA claim was not decided at trial because it's not for a jury to decide. It is for a judge, and that was going to be reserved for a later date, as was front pay and attorney's fees. Mrs. Sherrod settled with United Way of Tarrant County shortly after the verdict and then filed this appeal to pursue her claims against United Way Worldwide. You might ask, well, are you double dipping or taking two bites of the apple? She's not. Separate damages flow from separate defendants. The actions of certainly the lost wages are the same, and that's not going to be recovered, back pay. Front pay is still out there. The intangibles that flow, the emotional distress, the anguish. And what was the emotional distress or anguish or other damage that flows from what United Way Worldwide did? There's separate stress, anguish, and lingering effects that flow from the betrayal of each defendant. Betrayed by one, that affects you, and if you're betrayed by another, that has lingering effects. Those are separate damages that would be flowed, and a jury charge would be asked, what are the damages against those defendants and maybe even separate defendants? They could be combined. I would say that's left for the trial court to decide at the trial court level. Exactly did United Way Worldwide do wrong? They participated in the termination of Mrs. Sherrod or knew about it, had the power to stop it, and recklessly disregarded her rights. So that's not obviously what Section 510 says, right? 510 doesn't use any of the words that you just used to me, and it's also, I guess perhaps more importantly, it's not what the first amended complaint, that's the one that your client stood on, right? Yes. Okay, so I'm looking at paragraphs 124 to 128, which I take it to be the paragraphs where the allegations would be against United Way Worldwide as to the things that United Way Worldwide did wrong. Yes. And it says things like United Way Worldwide says it's shocked. So obviously United Way Worldwide couldn't have said it's shocked. I guess an officer or a representative or an employee or an agent or someone, but it's not even identified who says that it's shocked here, right? Is this referring back to the conversations in paragraph 74 that your client had with the folks at United Way Worldwide? Well, she did have prior conversations about a year earlier or nine months earlier along with another executive who was African American. But I think the conversation here in February of 2017 was picking back up and saying, yeah, it was a continuation of what was happening there, and also there have been violations of ERISA, the failure to pay 403B, the equivalent 401K contributions to employees that needed to have been made, and that she had been bringing those to the attention as well as was asked to investigate, was supposed to investigate the executive vice president's claims, but they took Kinesha Sherrod, the vice president of HR, off the investigation, had an independent investigator investigate it. She's now investigating another claim and sees that she is being retaliated against by the CEO-to-be for standing up and arguing for the ERISA and the investigation. She sees the handwriting on the wall and is already experiencing retaliation, has filed an EEOC charge. She calls United Way. By the way, she's on a committee at United Way. United Way gives training, and United Way enforces their members to follow the law, specifically even mentioning discrimination law. Picks up the phone, asks for help. They say, we're going to look into it. Ten days later, she's terminated. Who says this? All that is pled is United Way Worldwide. But who said it was an executive at United Way Worldwide. But we don't know who, we don't know, we don't know anything about that executive or any other, right? I mean, so Iqbal and Twombly require some allegations of they would satisfy Rule 8, sufficient to state a claim, and it doesn't allege sort of who the person is or any other fact that would give rise to the conclusions that are in 128, Paragraph 128 about intentionality, et cetera. Right. So, Your Honor, at some point, we could list names, dates, times, documents, and put our whole case into a pleading, but I don't think that's what Iqbal-Twombly standard is. It is the facts that allow a plausible claim to arise, sufficient even circumstantial for this court to draw an inference that there is liability, and that can be done through circumstantial evidence by just showing the prima facie case, and we have alleged that. Let me ask you about that. In reading this section of your mini-complaint that says here's a new part we're adding for UWW's participation, reading through the paragraphs, including those my colleague has pointed out, it almost seems to be supportive of United Way Worldwide's non-participation in any determination. Their concern for discrimination. Your quoting of Worldwide's bylaws that says law, including non-discrimination law, must be complied with. And then you get to this paragraph that almost seems to go 180, saying they somehow participated. Now, when something happens, I mean, basically what your briefing is saying, we need discovery. But when something happens that a person feels is wrong, I mean, I'm not saying anything other than the obvious. You just can't sue everyone who may have had some role. You've got to have some plausible basis, and discovery can help fill that in. The only thing I see in this complaint, maybe, and I don't want you to respond to the argument, maybe there's more to it than that, is that they would have been concerned about discrimination, that they would not have played a role, and there's really nothing in here that, tell me otherwise, that would indicate that you have the start of a claim against UWW. So my answer would be is we have a prima facie case, which is all that needs to be pled. So there's no dispute or there's direct evidence or direct pleading that Mrs. Sherrod reported violations of ERISA and Section 1981 to United Way Worldwide. We have direct pleading that she was terminated. That's an adverse action. And we have the third step is causation, and at the prima facie stage, causation can be shown simply by close proximity. I mean, why isn't that just alleging they could have? They could have played a role. That's basically as opposed to there's a plausible basis to believe that they did have them, did play a role. That is the same issue you have with the employer. If the employer, if she reports it to her employer, United Way Worldwide, and she's terminated shortly thereafter, that's all that is needed for the prima facie. Well, but they terminated them. The employer acted. We don't know that UWW acted, and you don't have any ñ I mean, you need to have something in here, it seems to me, respond to this, something in here that says UWW did act and that they caused the termination or affected the termination. The question is whether or not the facts are sufficient to infer their involvement. We have the facts I've just alleged, which meet the prima facie case of an employer. In addition, we have the statement that says we are going to look into it, investigate. We have their statements afterwards that they are looking into it afterwards. It is not hard to imagine that as soon as there's this phone call by Kenesha that there's phone calls with United Way. It's not hard to imagine. Imagine is sort of a synonym for speculate. Or inference. Well, you need something on which all you're talking about is possibility, not plausibility or probability. That's right. And so the question is whether or not those other facts raise it from a level of not just possibility to plausibility. When you have an entity that has control and authority and says it will act in your favor, and then you have a report, and then you have them saying we are going to look into it, that is more than just possibility. That's a plausible argument that they did look into it, that they did communicate. And so what is even stronger is United Way of Tarrant County does not deny that there was communications. And in their answer, the – You didn't allege communications. Pardon? I don't see anything in here that alleges communications. They don't deny participation. I mean, there's no allegation in 124 to 128 that United Way worldwide made – I mean, suppose you had added a paragraph in here in the complaint, 125A, that's not here, that it said, and as soon as they hung up the phone with my client, phone calls were made on information and belief. Now, that would be hard because there's nothing in here that suggests that phone calls were made or participation was had. But it's not obvious to me that that would also satisfy Rule 8, but even that isn't here, and so it's another bridge, it strikes me, that you're asking us to take to infer what happened. It's not alleged. This is not a situation where there was no phone call, no commitment to look into the matter, no previous involvement by United Way worldwide. This is a situation where all that's there, and they, to this day, have not denied. They haven't had to file an answer to deny, and we specifically sent discovery on these, and they refused to answer the discovery. Can I ask a statutory text question? Sure. I realize we're running out of time. So I'm looking at the text of Section 410. Yes, 510. I'm sorry, 510, pardon me, thank you. It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate. I assume that the allegation against UWW is simply discriminate. That's right. And the allegation of discrimination is they knew about it, and they could have done something, and they didn't. Treated her differently than other people. And what would be the best case that you have from any court that would suggest that it's discrimination on these facts under 510? Well, I have the Anderson case that says it applies to a person. The fact scenario would be the cases that concern interference. So discrimination is treating her differently. If they're treating her differently than people who do not report these things, right? And what it is exactly did you allege that they did that treated her differently? Participated in her termination and did not take any action to prevent it. What did you allege that shows they participated in her termination? It's an inference, which this court can draw, based on the report and that they would be involved in it, and it had the power to be involved. Do you have a memo, an e-mail, a person saying they talked to anybody at United Way about the termination decision? Nothing other than they said they would. They said they would investigate. They didn't say they would terminate. Yes. An investigation presumably is going to have to be communicating with the person they're investigating. I don't see any other inference. But that doesn't mean that they participated in a decision to terminate or knew about it or recommended it or? Well, Mrs. Sherrod sees the handwriting on the wall, so they knew something was going to happen. Well, but the handwriting was after a jury verdict by Tarrant County United Way. I'm not sure you've shown the writing hand of UWW is obviously why we're here. It comes down to whether or not this is a reasonable inference, Your Honor, that deserves discovery. So it either is just a mere speculation or possibility, and we're just throwing it to the wind, or there actually are facts that would show their involvement, and they need to respond and say, we were involved or we weren't, and here's our document showing otherwise. And the same Tarrant County should be able to respond and say they refused to answer whether or not or need discovery whether or not there was communications. But just tell it. Thank you. Good morning. Michael Royal and Russell Chapman on behalf of the appellee, United Way Worldwide. And today I'm going to speak to the issues relating to 1981 primarily. Mr. Chapman is going to speak to the issues relating to the ERISA 510 claim. And if I could begin by simply addressing and rebutting one thing the opposing counsel said. He had called United Way Worldwide the parent company to United Way Tarrant County, and that's absolutely incorrect. United Way Worldwide is a nonprofit charitable organization that is separately incorporated from the United Way Tarrant County. I won't belabor the facts as the panel has already discerned. There is little to no indication that United Way Worldwide had any role whatsoever in Ms. Sherrod's employment. There's no allegations that have been pled that United Way Worldwide hired her, had anything to do with supervising her, had any role in the day-to-day activities of anyone at Tarrant County. When you look to the allegations as to her or United Way Worldwide's involvement in the ERISA claims, there's no claims that have been pled or no allegations that have been stated that United Way Worldwide had any involvement. It was Tarrant County that deleted their pension plan. It was Tarrant County that enacted some sort of new ERISA plan for both the executives and the employees. It was Tarrant County to whom the complaints were directed that the plan was discriminatory or was otherwise being violated. And it was Tarrant County that made the decision regarding whether or not they should hire a new investment advisor for the ERISA plans. Counsel, let me ask you though, but there are, in fairness, I'm not saying you're being unfair, in fairness to the complaint, there was communication between UWW, an inference he's saying, a plaintiff is saying, a fair inference that there was communication between the two defendants in this case, that on February 21, the plaintiff informed your client of what she thought was improper conduct, discrimination. She was fired roughly 10 days later. Two weeks after that, there's more contact between the plaintiff and UWW about what's going on or what had gone on. So what the plaintiff is trying to say, that is at least a firm basis for saying there was communication between UWW and Tarrant County. Would you agree with that? Is that inference, I'm not asking you to say where that takes us, but isn't that inference there? I would disagree with that, Your Honor, respectfully. The communications, there's nothing in the complaint that I read as a communication between Tarrant County and the UWW people other than Ms. Sherrod herself making these allegations that Tarrant County had done something inappropriate to her or others. And so other than Ms. Sherrod's communications, there's no allegations in the complaint that there's been any communications. Well, I would agree with that. The allegation, that's a fair statement. The allegation is not there. To use Judge Odom's language, maybe she couldn't have said on information and belief because she doesn't have that information. But at least it's on belief that I asked UWW to look into it, and for purposes here of pre-discovery, we can assume that they did. I'm saying that would be the plaintiff's position, I think. I can be corrected. But it does seem to me that that's at least a start for saying there was contact between UWW and Tarrant County. Are you saying the absence of any explicit allegation to that effect is the problem, or what's the real difficulty even with that? Yes, exactly. When you look to the cause of action, the 1981 discrimination claim requires some evidence of intentional actions involving some sort of racial animus. There's nothing in the pleadings that gives any indicia that there was any sort of racial bias on behalf of Worldwide. The only actions are alleged in the complaint are that the CEO of Tarrant County did something or said something, that the COO of Tarrant County did something or said something, or that the financial director of Tarrant County did something or said something. To the contrary, the only allegations in the complaint when you see communications to Worldwide are that these allegations of what was happening at Tarrant County, and again, there's no indicia of animus. She didn't get any sort of negative feedback from Worldwide. To the contrary, she found a very sympathetic ear with a person that purportedly, according to the pleadings, said, I'm shocked to hear that. They said we want to look into this. They indicated nothing but respect for her and her complaints, and at no time said anything that could even, under the wildest stretch of imagination, lead one to believe that they could meet their prima facie case to prove an intentional discrimination based on racial animus. That's really one of the main fallacies of their claim. What I would suggest is that what they're trying to avoid having to talk about is joint employment, because again, it's very clear under the case law that they couldn't even come close to proving joint employment. I think that's why we don't see a Title VII case in this particular petition. When you push forward, again, without any sort of inference that Worldwide had any racial animus, the 1981 claim dissolves in and of itself. I'm not sure if that answers your question fully. Can I ask you a question about paragraph 91 in the First Amendment complaint? It says, when member organizations such as United Way, Tarrant County, violate the law, United Way Worldwide can remove the head of the organization. I assume that's the CEO. Maybe there's a president or something else. Remove the membership of the organization and terminate the license of the brand. Is that true? We have to take those allegations as true for purposes of these proceedings, Your Honor. That makes it sound like there's a different sort of – this is going back to the very way you opened your argument this morning. That strikes me as a very different corporate relationship between UWW and UWTC. It's almost akin to a franchising relationship into where UWW licensed their brand, their trademark, to a local affiliate such as a Tarrant County. And in order to protect their trademarks and the value of their brand, they reserve very limited rights. But again, even assuming that that is true, that they have a right to remove the CEO or whoever it is, if they find something that would require that or merit that, there's still nothing in here that talks about that they have a right to come in and have any sort of day-to-day actual control over the workforce. And again, the plaintiff in this case, Ms. Sherrod, was the HRVP for Tarrant County. If anyone would know whether or not Worldwide had ever come in and meddled in employment matters, it would have been her, and we would have seen it in these pleadings. And I think the pleadings speak for themselves, and they're simply devoid of any facts. There's a big difference between meddling day-to-day in employment matters and terminating the license of someone who's been racially discriminatory. That's correct, Your Honor. And the pleadings are completely devoid of any inference, even, that United Way Worldwide had an active, intentional role in her termination. The only time it's mentioned is in a speculation. Terminating her boss. Excuse me? Terminating the head of Tarrant County. Terminating the CEO? Yes. And I apologize, I don't understand the question. I thought the point of Judge Oldham's questions, maybe I missed it, was that Worldwide could come in and terminate the director or the head of Tarrant County to protect the brand, and they authorized that degree of control. And so if Worldwide knew that a person in charge at Tarrant County had racially discriminated or done other acts, they could have terminated them. That's a degree of control that's alleged in the complaint. That's correct, Your Honor. But in terms of 1981, it requires actual day-to-day control of the employment circumstances, and most importantly, the control or direct inference that there was activity towards the plaintiff, in this case, Ms. Sherrod herself. And so whether or not United Way Worldwide had the ability to terminate the CEO for some activities, I would argue is separate and apart from the issue of whether they actually had any sort of involvement in this. After the jury's verdict in Ms. Sherrod's favor against United Way Tarrant County, did UWW take any action against the local affiliate, against its officers, directors, anyone? I'm not aware of them having done anything, Your Honor. They may have, and I'm not aware of it. Absent any other questions, I'm going to remit the remainder of the time to Mr. Chapman. Thank you. Good morning. May it please the court, counsel, and I apologize for my voice. I'm just having some issues with it right now. I'm going to confine my argument this morning to ERISA Section 510, the plaintiff's ERISA Section 510 claims. I think the question of the factual allegations in the first amendment complaint were very capably argued by Mr. Royal. I'm going to address myself to three of the arguments we made in our brief. Apologies, we're delving into the labyrinthine mysteries of ERISA. United Way worldwide argues first that it is not a proper party defendant in this case, notwithstanding the court's holding in Manuel v. Turner. In Manuel v. Turner, the court made it clear that some non-employers are proper party defendants in an ERISA Section 510 case. The court relied on the case of Custer v. Pan American Life. In that case, the court in Custer stated that the defendants in that case were within the class of persons who were covered by Section 1140 or Section 510 of ERISA. Now, a class of persons, by definition, is not all of the persons in the universe. Our argument is basically based on the fact that unlike Section 1981 and many of the other provisions of the federal code, ERISA is not a statute of general applicability. ERISA only applies when there is an ERISA covered employee benefit plan and that plan is an issue. In addition, ERISA applies to the plan and to persons who have some relationship with the plan. There's a long list of these that are set out in the definition section of ERISA. Plan sponsors, employers, employees, participants, beneficiaries, fiduciaries, trustees, plan administrators, investment managers, the list goes on and on. Did I mention trustees? I mean, there's any number of them. But once – and I think of ERISA as being a bubble. At the center of the bubble is the ERISA plan. Within that bubble are all these parties who have a relationship, who have some duty or have some rights with respect to the plan.  ERISA is not really intended to deal with people who are outside that bubble, third parties. Just in this example, a CPA firm that provides services to an ERISA plan is not a fiduciary, cannot be sued for fiduciary breach unless they step into the role of fiduciary. Now, so that being the question, the real question for this court is accepting the premise that Manuel held that only some employers are proper party defendant in an ERISA Section 510 claim. That means that some parties are not. And the question is where do you draw the line? Our position is you draw the line in terms of those relationships. So, for example, in this case, Ms. Sherrod claimed that she complained to Tarrant County, to the CEO, that distributions were not being properly made from – there was a top hat plan, a rabbi trust. She does not claim that United Way Worldwide had any authority, duty, responsibility, position whatsoever with regard to that plan. She claims that she went to the CEO and complained that the federal reporting requirements were not being complied with with regard to the Section 403B plan. And then also that that plan, the committee, whoever selects the investment manager, had not – had selected a poor investment manager. She does not allege that United Way Worldwide had any authority, duty, responsibility, or position with regard to federal reporting requirements with regard to – or with regard to selecting, screening, appointing, or replacing investment – or monitoring investment managers with respect to that plan. It just wasn't United Way Worldwide's plan. So we propose that the rule in a case like this should be that where the ERISA Section 510 protected activity claims is providing information, testimony, or prospective testimony in an ERISA inquiry or proceeding, to be a proper party defendant, the defendant must have some official capacity with respect to the plan complained of that relates to the complaints made. Now, the case law seems to bear this out. We have been able to locate a case, and the plaintiff certainly has not cited one, where anyone outside that ERISA bubble was successfully sued in an ERISA 510 claim. There are always insurers, there are plan administrators, there are trustees, there's the plan sponsor, or in some cases the president of the plan sponsor. But there has not been a case where someone with just simply no connection to the ERISA plan has been sued in an ERISA Section 510. Explain to me, under the Lucan Supreme Court opinion, what is the union in light of your effort to draw this line? How does a union fit into that argument? Well, a union, in ERISA terminology, is an employee organization. And an employee organization can sponsor an ERISA plan. That way, an employee can go from one employer to another and still participate in the same plan and attain seniority and credits and so on in that same plan. The employers sign on to the plan, they effectively adopt the plan as a participating employer, and they contribute to that plan. So that union plan sponsor, and there are cases where union plan sponsors have been held liable under ERISA Section 510. There are two or three cases like that. And one example given in one of the cases was where a union with a closed shop agreement, an exclusive shop agreement with an employer, basically expelled. And that's why you have the word expel in Section 510. Expelled a member from the union, and that required, under the union collective bargaining agreement with the employer, required the employer to fire the employee. So that would be an example of a Section 510 claim that was lodged against a union. All right, our second argument is that there's no evidence of specific intent to discriminate in this case on the part of United Way Worldwide. In fact, as has been noted from the First Amendment complaint, when Ms. Sherrod contacted United Way Worldwide, it appeared sympathetic to her complaints. There were no expressions of irritation, annoyance, anger, or anything else that would evince an intent to discriminate. But beyond that, again, and this is related to the argument regarding a proper party, United Way Worldwide would have had no motive under the case law to discriminate on the – and again, Section 510 requires specific intent. It does not have to be the only motive for the action, but it does require specific intent to discriminate on the basis of ERISA Section 510. However, the defendant must have some material financial, business, or other interest to protect related to the plan. Most of the cases deal with – and they're cited in the brief – but the cases deal with interference with benefit claims. And the cases hold that where the employer does not really have – there's really no substantial financial impact on the employer as a result of the loss of benefits, then there can be no realistic motive for the employer to have interfered with the employee's benefits. That same theory, we argue, holds true on the participation clause of ERISA Section 510, that where the employer has no interest in what happens, no material interest, there can be no material consequences to the employer based on the complaints that are being made, then there's no realistic motive that the employer could have had to interfere with the employee's rights or to discriminate against her. For example, again, the plaintiff alleged that United Way – she complained to United Way Tarrant County that the plan was not being properly administered. I see my time is up, but all I can say is we ask that the court affirm the judgment of the district court, and I thank you for your time. Would you add a minute to the opposing side? I apologize for going over. Thank you. The first issue I'd like to address is where they're talking about evidence of specific intent to discriminate, allegations of retaliation. Yes, Section 1981 is about discrimination. The Supreme Court, I believe in the Humphreys case, said Section 1981 also protects retaliation. ERISA – the ERISA statute is the retaliation statute. The motivation is retaliation. If you need further motivation underlying that, it's protecting the brand, avoiding embarrassment, not wanting to have the cost of complying with the ERISA law or the cost of complying with Section 1981. There's a myriad of motives. So it's retaliation. Now, of course, as Title VII, even in the statute, the retaliation statute under Title VII says may not retaliate by discriminating. So discrimination is retaliation by another name. In terms of the ERISA, the proximity, the bubble example that was given, we rely on the plain language of the statute. The statute and the definitions, as this Court has already ruled, use the word person. That's defined under ERISA Section III as is employer, as is planned sponsor. They did not use the word planned sponsor. They did not use the word employer. They used person. So, again, we would rely on our arguments that United Way Worldwide had the control, the ultimate control, said that they would remove the license or the executives if they violate the law, including ERISA, including discrimination laws. So that's the two items I needed to address. Thank you. That will conclude the arguments.